**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION**

**CATHERINE L. TAYLOR**                                                                    **PLAINTIFF**

**v.**                          **CASE NO. 4:10CV00282 BSM**

**TENANT TRACKER, INC., a/k/a/
RESULT MATRIX, INC.**                                                                      **DEFENDANT**

## ORDER

Defendant Tenant Tracker, Inc.'s motion for summary judgment [Doc. No. 40] is GRANTED.

### I. FACTUAL BACKGROUND

In September 2008, plaintiff Catherine Taylor and her husband Max Taylor applied for federal housing assistance with the Benton Public Housing Authority (BPHA). Wanda Taylor Dep. Ex. 3. At the time of their application, the Taylors' household income was limited to social security benefits payable to Max and two of their three children. *Id.*; Catherine Taylor Dep., at 18. Because the Taylors met the initial qualifications for a Section 8 voucher, plaintiff was added to BPHA's waiting list. Wanda Taylor Dep., at 6.

On April 7, 2010, after rising to the top of the waiting list, plaintiff and her husband met with a BPHA counselor to complete the requisite background check. Catherine Taylor Dep., at 17. To initiate the process, the Taylors signed a release providing their names, addresses, phone numbers, dates of birth, social security numbers, and driver's license numbers. Wanda Taylor Dep. Ex. 9. That document authorized BPHA to perform federally mandated screening for drug-related or violent behavior or for sex-offender registration. *Id.*

BPHA has subscribed to Tenant Tracker's public record reporting service since 2003 and used that service on April 7, 2010, to conduct criminal background checks on the Taylors. Clifton Aff. ¶¶ 2, 3. Plaintiff's report was generated at 10:42 a.m., and lists under applicant information the name "Catherine Taylor," her date of birth, social security number, and driver's license number. Wanda Taylor Dep. Ex. 10. Under "Public and Criminal Information" there are five separate entries immediately preceded by the following language: "WARNING: Any service NOT using fingerprint analysis has limited effectiveness and is subject to the uniqueness and truthfulness of the applicant's identification. Subscriber shall use all additional identifying information to confirm accuracy." *Id.*

The first two entries list an offender by the name of "Chantel Taylor" born on the same date as plaintiff and indicate that "Chantel Taylor" was convicted in Florida state court of two counts of felony aggravated child abuse in 1990. *Id.* The entries for "Chantel Taylor" were included in the records search as a derivation of or possible alias for "Catherine Taylor." Clifton Aff. ¶ 5. The third through fifth entries list an offender by the name of "Catherine Taylor" born on the same date as plaintiff and indicate that "Catherine Taylor" was convicted in Illinois state court of theft, forgery, and possession of a controlled substance between 2003 and 2006. Wanda Taylor Dep. Ex. 10. These entries also indicate that "Catherine Taylor" has a tattoo of the word "Troy" on her left ankle. *Id.*

Wanda Taylor, an employee of BPHA and of no relation to plaintiff, reviewed the report almost immediately and in the presence of the Taylors. Wanda Taylor Dep., at 35-36.

She immediately noticed the first name "Chantel" and began to doubt whether the first two entries were attributable to plaintiff. *Id.* at 36. She then noticed the notation about the left ankle tattoo on the third through fifth entries and visually confirmed the lack of any tattoo on plaintiff. *Id.* at 38. Additionally, plaintiff's height, weight, eye color, and hair color distinguished her from the "Chantel Taylor" and "Catherine Taylor" listed on her report. Catherine Taylor Dep., at 30. Therefore, although the report initially caused Wanda Taylor to doubt the Taylors' eligibility, upon further scrutiny, it became clear that the "Chantel Taylor" and "Catherine Taylor" were not, in fact, plaintiff. Wanda Taylor Dep., at 40.

Plaintiff was visibly upset during the background check. *Id.* at 48. She was asked whether she had any criminal history and specifically whether she was a registered sex offender. *Id.* at 62. Because of her relatively common name, plaintiff has experienced similar problems before, including being confused with the thrice-convicted "Catherine Taylor" from Illinois. Catherine Taylor, Dep., at 40. Indeed, she has twice previously sued records reporting entities in federal district court, alleging violations of the Fair Credit Reporting Act (FCRA). *Id.* at 28, 44, 47.

During the background check at issue, Wanda Taylor made several handwritten notes on the report itself including striking through the "Chantel" entries, circling the tattoo notations next to the "Catherine Taylor" entries, and writing "no tattoo" in the margin. Wanda Taylor Dep., at 68. Plaintiff and her husband were approved the same day. *Id.* at 68, Ex. 9.

The following afternoon, Tenant Tracker transmitted another report on plaintiff using additional identifying information obtained from BPHA. Clifton Aff., ¶ 7. This new document showed no criminal history. *Id.* The Taylors ultimately did not receive a voucher because plaintiff obtained employment in the intervening period, and, as a result, her family no longer met the income qualifications. Catherine Taylor Dep., at 52.

Plaintiff originally brought numerous claims against Tenant Tracker, but has voluntarily dismissed all of them except her cause of action under 15 U.S.C. § 1681e(b). Tenant Tracker moves for summary judgment arguing that the report is entitled to First Amendment protection and was technically accurate.

## II. LEGAL STANDARD

Summary judgment is proper if, after viewing the evidence in the light most favorable to Taylor, no genuine issues of material fact exist and Tenant Tracker is entitled to judgment as a matter of law. *Nelson v. Corr. Med. Servs.*, 533 F.3d 958, 961 (8th Cir. 2008). Taylor cannot survive the motion for summary judgment merely by pointing to disputed facts; the facts in dispute must be material to the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1985). If the facts alleged by Taylor, when viewed in the light most favorable to her claims, would not allow a reasonable jury to find in her favor, then summary judgment should be granted in favor of Tenant Tracker. *Bloom v. Metro Heart Group of St. Louis, Inc.*, 440 F.3d 1025, 1029 (8th Cir. 2006).

## III. DISCUSSION

Summary judgment is granted because the record is devoid of evidence from which a reasonable jury could find a violation of the FCRA.

The statute under which plaintiff proceeds is entitled "accuracy of report" and provides as follows: "Whenever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. § 1681e(b). If plaintiff can show that Tenant Tracker negligently failed to comply with this requirement, she may recover actual damages, costs, and attorneys' fees. *Hauser v. Equifax, Inc.*, 602 F.2d 811, 814 (8th Cir. 1979) (citing 15 U.S.C. § 1681o). Additionally, if she can show Tenant Tracker's violation was willful, plaintiff would be entitled to punitive damages. *Id.* at 814 (citing 15 U.S.C. § 1681n).

To begin, the statute does not provide for strict liability for each inaccuracy. *Id.* The inquiry is whether the inaccuracy "resulted from the [reporting] agency's failure to 'follow reasonable procedures to assure maximum possible accuracy.'" *Id.* at 814-15. The most recent Eighth Circuit case on point is *Wilson v. Rental Research Svcs., Inc. (Wilson II)*, 165 F.3d 642 (8th Cir. 1999), vacated on rehearing en banc, 206 F.3d 810 (8th Cir. 2000).

In *Wilson*, the plaintiff sought to lease an apartment from a landlord who subscribed to a credit reporting agency engaged in the business of providing background information on prospective tenants. *Id.* at 643. The landlord requested an "instant inquiry" report on plaintiff that showed "twelve 'possible' reports of unlawful detainer actions" over the previous three years involving a person with the same or similar name of plaintiff. *Id.* Two were filed on the

same day, and two others were filed days apart in different counties. *Id.* Like the document at issue in the present case, the defendant's report provided a disclaimer warning the subscriber that the records were pulled using limited identifiers and required further verification. *Id.*

The district court granted summary judgment in favor the defendant reporting agency finding that the background check was an "accurate reporting of court records" even though the evidence showed that only two of the twelve unlawful detainer actions actually involved plaintiff. *Wilson v. Rental Research Svcs., Inc., (Wilson I)*, No. 3-96-820, at 11 (D. Minn. Nov. 10, 1997). It reasoned that the report warned that the list contained "possible" matches as opposed to "confirmed identical matches" and that the disclaimer sufficiently "identifie[d] the nature of the information and its limitations." *Id.* at 12-13.

In a two-to-one panel decision, the Eighth Circuit reversed the district court on this point. *Wilson II*, 165 F.3d at 644-47. The panel majority held that the district court erred by applying "technical accuracy" standard and adopted a balancing test used by the D.C. Circuit Court of Appeals. *Id.* at 646. Under that test, the court is to "weigh the potential that the information will create a misleading impression against the availability of more accurate [or complete] information and the burden of providing such information. Clearly the more misleading the information [i.e., the greater the harm it can cause the consumer] and the more easily available the clarifying information, the greater the burden upon the consumer reporting agency to provide this clarification." *Id.* (citing *Koropolous v. Credit Bureau, Inc.*, 734 F.2d

37, 42 (D.C. Cir. 1984).

Shortly after that opinion issued, the agency's petition for rehearing *en banc* was granted and the case was set for re-argument. 191 F.3d 911 (8th Cir. 1999). The Eighth Circuit Court of Appeals, sitting *en banc*, split five-to-five, vacated the panel decision, and affirmed the district court. 206 F.3d 810 (8th Cir. 2000). The undersigned can find no more recent cases discussing the proper standard for accuracy under 15 U.S.C. § 1681e(b). Accordingly, the law of this circuit is set forth in the district court's *Wilson* opinion.

Summary judgment must be granted because the record is devoid of any evidence suggesting that the report itself is "technically inaccurate" or that Tenant Tracker acted negligently in preparing it. Plaintiff's argument, of course, is not that "Chantel Taylor" of Florida or "Catherine Taylor" of Illinois did not commit the crimes as set forth in the report., but rather that those crimes are not attributable to *her*. Nevertheless, plaintiff has still failed to produce evidence from which a reasonable juror could find that Tenant Tracker's procedures were negligently designed or deployed and that such defects thwarted its ability to report accurately.

While this outcome might seem unfair to plaintiff, the fact remains that many Americans have popular first names and common surnames. As noted by the panel dissent, it would be a strange consequence of the FCRA to conduct jury trials every time a possible match appears on an applicant's report. *See Wilson II*, 165 F.3d at 649. Moreover, plaintiff suffered no damage in explaining that she was not the Chantel or Catherine on her report. Her

family was approved during her meeting with the BPHA counselor who reviewed the first report, and once Tenant Tracker received updated identifiers from BPHA, it promptly issued a second report.

Accordingly, Tenant Tracker's motion for summary judgment [Doc. No. 40] is granted, and Taylor's complaint is hereby dismissed with prejudice.

IT IS SO ORDERED this 4th day of November 2011.

*/s/ Brian S. Miller*
UNITED STATES DISTRICT JUDGE